## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

MARK W. DOBRONSKI,
 an individual,

      Plaintiff,

 v.

AMAZON.COM, INC., a Delaware
corporation, d/b/a AMAZON
BUSINESS USA, and  AMAZON
WEB SERVICES, INC, a Delaware
corporation,

Case No.

**NOTICE OF REMOVAL**

     Pursuant to 28 U.S.C. §§ 1331, 1332, 1441, and 1446, Defendants Amazon.com, Inc. and Amazon Web Services, Inc. (collectively, the "Amazon Defendants"), by and through their attorneys, K&L Gates LLP, hereby remove the above-entitled action from the Washtenaw County Circuit Court, State of Michigan (the "State Court"), to the United States District Court for the Eastern District of Michigan. In support of this Notice of Removal, the Amazon Defendants state as follows:

## I.     BACKGROUND

1.     On February 10, 2026, Plaintiff Mark W. Dobronski ("Plaintiff") commenced this action against the Amazon Defendants by filing a complaint in the State Court, Case No. 26-000286-CZ (the "Complaint").

2.     On February 12, 2026, the Amazon Defendants were served with a summons and copy of the Complaint. A true and correct copy of the summons and Complaint is attached hereto as **Exhibit A**.

3.     Plaintiff alleges that his residential telephone number—which has been listed on the National Do Not Call Registry since June 1, 2004, and is assigned to a service for which he is charged on a per-call and per-minute basis—was the target of nine unsolicited telemarketing calls made by or on behalf of the Amazon Defendants between January 23, 2024 and June 12, 2025. Ex. A, Compl. ¶¶ 24-29, 73-121. Plaintiff alleges that each of these calls was placed using an automatic telephone dialing system; that the callers expressly represented that he or she was "an account manager with Amazon Business," "with Amazon Web Services," or "calling on behalf of Amazon Web Services"; that the callers promoted Amazon-branded products and services; and that the calls were made without Plaintiff's prior express consent. Ex. A, Compl. ¶¶ 35-37, 68-70.

4.     Based on these allegations, Plaintiff asserts seven causes of action under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA") and its implementing regulations, and one cause of action under the Michigan Home

Solicitation Sales Act, MCL 445.101, *et seq.* ("MHSSA"). Ex. A, Compl. ¶¶ 122-156.

5.     Plaintiff seeks trebled TCPA statutory damages and MHSSA statutory damages, in the total amount of $96,750. Ex. A, Compl. Prayer for Relief A. Plaintiff also seeks a permanent injunction "enjoining Defendant Amazon and its agents or representatives from initiating further telephone solicitations or telemarketing calls to Plaintiff," and attorney's fees, costs, and statutory interest. Ex. A, Compl. Prayer for Relief B-E.

## II.     THE COURT HAS FEDERAL SUBJECT MATTER JURISDICTION

6.     Under the provisions of 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," this Court has original federal question jurisdiction over this case. Therefore, removal to this Court is proper under 28 U.S.C. §§ 1441(a) and 1446.

7.     Plaintiff's Complaint asserts claims under the TCPA, a federal statute. Ex. A, Compl. ¶¶ 122-153. Specifically, Plaintiff alleges that the Amazon Defendants used an automatic telephone dialing system to place nine unsolicited telemarketing calls to Plaintiff's residential telephone number between January 23, 2024 and June 12, 2025. Ex. A, Compl. ¶¶ 24-29, 73-121. Plaintiff further alleges that his telephone number is assigned to a service for which he is charged on a per-

call and per-minute basis, and that his number has been continuously registered on the National Do Not Call Registry since at least June 1, 2004, such that the Amazon Defendants' calls were made without prior express consent in violation of 47 CFR 64.1200(a)(1), (a)(2), (a)(7), (c)(2), and (e). Ex. A, Compl. ¶¶ 27-28, 122-153. Plaintiff seeks trebled statutory damages of $94,500.00 and a permanent injunction under the TCPA. Ex. A, Compl. Prayer for Relief A, D. As such, this action arises under the laws of the United States and is removable to this Court on that basis. *See* 28 U.S.C. §§ 1331, 1441.

8.      There is supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367 because it is so related to the TCPA claims that it forms part of the same case or controversy under Article III of the United States Constitution. Plaintiff alleges that his MHSSA claim arises from the same nine unsolicited calls that form the basis of his TCPA claims—namely, that the Amazon Defendants placed telephone solicitations to Plaintiff's residential telephone number, which is registered on the National Do Not Call Registry, without his prior express consent. Ex. A, Compl. ¶¶ 154-156. Thus, Plaintiff would be expected to try this claim in the same proceeding, and this Court has supplemental jurisdiction over Plaintiff's MHSSA claim under 28 U.S.C. § 1367.

## III.   THE COURT HAS DIVERSITY JURISDICTION OVER THIS ACTION

9.      As a separate and independent basis for removal, this Court also has diversity jurisdiction over this action under 28 U.S.C. § 1332(a) because: (1) complete diversity of citizenship exists between the named parties; and (2) the amount in controversy exceeds $75,000.00, exclusive of interest and costs. Accordingly, removal to this Court is proper pursuant to 28 U.S.C §§ 1441(b) and 1446.

## A.      Complete Diversity of Citizenship Exists Between the Named Parties

10.      Plaintiff "has a domicile in Orange County, Florida, and has a residence in Washtenaw County, Michigan." Ex. A, Compl. ¶ 2. He is therefore a citizen of Florida and of no other state. *See Wieland v. Dodds*, No. 23-5709, 2025 WL 2217669, at *2 (6th Cir. June 18, 2025) ("Diversity jurisdiction is based not on residency but on citizenship, which turns on domicile.") (internal quotation marks and citation omitted).

11.      Defendant Amazon.com, Inc. is a Delaware corporation with its principal place of business in Washington. Accordingly, Amazon.com, Inc. is a citizen of the States of Delaware and Washington for purposes of diversity jurisdiction. *See* 28 U.S.C § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business"); *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010) (holding that a corporation is a citizen of its place of

incorporation and its "principal place of business," which is "the actual center of direction, control, and coordination" of the corporation's activities).

12.     Similarly, Defendant Amazon Web Services, Inc. is a Delaware corporation with its principal place of business in Washington. Accordingly, Amazon Web Services, Inc. is a citizen of the States of Delaware and Washington for purposes of diversity jurisdiction. *See* 28 U.S.C § 1332(c)(1); *Hertz Corp.*, 559 U.S. at 93 (2010).

13.     Thus, there is complete diversity of citizenship between Plaintiff and the Amazon Defendants because Plaintiff is a citizen of the State of Florida, and the Amazon Defendants are  citizens of states other than Florida. *See* 28 U.S.C. § 1332(a)(1) (providing for original diversity jurisdiction for matters between "citizens of different States").

**B.     The Amount-in-Controversy Requirement is Satisfied**

14.     To invoke diversity jurisdiction, the amount placed in controversy by the claims asserted and relief sought must exceed $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

15.     Here, the amount placed in controversy by the claims asserted and relief sought in Plaintiff's Complaint exceeds $75,000.00, exclusive of interest and costs.

16.     Specifically, Plaintiff seeks damages totaling $96,750, comprised of alleged TCPA statutory damages (including trebling) and MHSSA statutory

damages, as well as attorney's fees and costs. Ex. A, Compl. Prayer for Relief A-C. Plaintiff's requested monetary damages therefore exceeds the $75,000 amount-in-controversy requirement for removal. *See* 28 U.S.C. § 1446(c)(2) (providing that "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy").

## IV.    REMOVAL IS PROCEDURALLY PROPER

17.    Removal of this case is timely because this Notice is filed within 30 days of the service of the Complaint. *See* 28 U.S.C. § 1446(b).

18.    Pursuant to 28 U.S.C. § 1441(a), the right exists to remove this case from the State Court to the United States District Court for the Eastern District of Michigan, Southern Division, which district and division embrace the place where the case is currently pending, namely Washtenaw County, Michigan.

19.    Under 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed promptly with the clerk of the State Court and the Amazon Defendants will give written notice to Plaintiff.

WHEREFORE, the Amazon Defendants respectfully request that the Court assume jurisdiction over this matter and that no further proceedings be held in the State Court. In the event that any question arises as to the proprietary of removal, the Amazon Defendants request the opportunity to submit briefs and be heard at argument in support of its position that removal is proper.

Dated:        March 5, 2026

By: */s/ Michael J. Stortz*

Michael J. Stortz (CA Bar No. 139386)
Michael.Stortz@klgates.com
Tae H. Kim (CA Bar No. 331362)
Tae.Kim@klgates.com
K&L GATES LLP
Four Embarcadero Center
Suite 1200
San Francisco, California 94111
Telephone: +1 415 882 8200
Facsimile: +1 617 261 3175

Attorneys for Defendants
Amazon.com, Inc. and Amazon
Web Services, Inc.

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 5, 2026, the foregoing Notice of Removal, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent via Federal Express or first class mail, postage prepaid, to those indicated as non-registered participants.

*/s/ Michael J. Stortz*
Michael J. Stortz

# EXHIBIT A

Approved, SCAO

| | Original - Court<br>1st copy - Defendant | 2nd copy - Plaintiff<br>3rd copy - Return |
|---|---|---|

| STATE OF MICHIGAN<br>22nd **JUDICIAL DISTRICT**<br>**JUDICIAL CIRCUIT**<br>**COUNTY** | **SUMMONS** | **CASE NUMBER**<br>26-000286-CZ<br>JUDGE JULIA B.<br>OWDZIEJ |
|---|---|---|

**Court address**
101 E Huron St, Ann Arbor, MI 48104-1446                                   **Court telephone number**
                                                                            734-222-3001

| Plaintiff's name, address, and telephone number<br>Mark Dobronski<br>c/o Oxbridge Legal Services, PLLC<br>340 N. Main St., Ste 324, Plymouth, MI 48170<br>Phone: (734) 892-2069 | v | Defendant's name, address, and telephone number<br>AMAZON.COM, INC. d/b/a AMAZON BUSINESS USA, and<br>AMAZON WEB SERVICES, INC.<br>410 Terry Avenue North<br>Seattle, Washington 98109-5210<br>Phone:206-266-1000 |
|---|---|---|
| Plaintiff's attorney bar number, address, and telephone number<br>C. Robert Dobronski III (P72684)<br>Oxbridge Legal Services, PLLC<br>340 N. Main St., Ste 324, Plymouth, MI 48170<br>Phone: (734) 892-2069 | | |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (MC 21). The summons section will be completed by the court clerk.

**Domestic Relations Case**
☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.
☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (MC 21) listing those cases.
☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

**Civil Case**
☐ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.
☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).
☑ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.                **SUMMONS**

**NOTICE TO THE DEFENDANT**: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside of Michigan).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date<br>2/10/2026 | Expiration date*<br>5/12/2026 | Court clerk<br>/s/ Lawrence Kestenbaum |
|---|---|---|

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (3/23)   **SUMMONS**                     MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

FILED IN WASHTENAW COUNTY Trial Court, 2/10/2020 1:11 PM

26-000286-CZ

**Summons** (3/23)

Case Number _____

## PROOF OF SERVICE

**TO PROCESS SERVER**: You must serve the summons and complaint and file proof of service with the court clerk before the expiration date on the summons. If you are unable to complete service, you must return this original and all copies to the court clerk.

### CERTIFICATE OF SERVICE / NONSERVICE

☐ I served   ☐ personally   ☐ by registered or certified mail, return receipt requested, and delivery restricted to the the addressee (copy of return receipt attached)   a copy of the summons and the complaint, together with the attachments listed below, on:

☐ I have attempted to serve a copy of the summons and complaint, together with the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| Place or address of service | |
| Attachments (if any) | |

☐ I am a sheriff, deputy sheriff, bailiff, appointed court officer or attorney for a party.

☐ I am a legally competent adult who is not a party or an officer of a corporate party. I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |

## ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of a copy of the summons and complaint, together with

_____ on _____.
Attachments (if any)                                                      Date and time

_____ on behalf of _____
Signature

_____
Name (type or print)

MCL 600.1910, MCR 2.104, MCR 2.105

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE 22ND JUDICIAL CIRCUIT
WASHTENAW COUNTY

MARK W. DOBRONSKI,
an individual,

        Plaintiff,

v.

AMAZON.COM, INC.,
a Delaware corporation,
d/b/a AMAZON BUSINESS USA, and
AMAZON WEB SERVICES, INC, a
Delaware corporation,

        Defendants.

Case No. 26-000286-CZ  -CZ

JUDGE JULIA B. OWDZIEJ

---

C. Robert Dobronski III (P72684)
Oxbridge Legal Services, PLLC
Attorney for Plaintiff
340 North Main Street, Suite 324
Plymouth, Michigan 48170-1250
(734) 892-2069
Robert@Oxbridge.Law

---

## COMPLAINT

NOW COMES Plaintiff MARK W. DOBRONSKI, appearing by and through counsel, C. Robert Dobronski III, and for his complaint against Defendant AMAZON.COM, INC. d/b/a AMAZON BUSINESS USA, and AMAZON WEB SERVICES, INC. (Collectively, Defendants are referred to as "Amazon") alleges:

1.     This is a consumer rights case under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 USC 227, *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), MCL 445.101, *et seq.*

1

Parties

2.      Plaintiff is an individual, of the age of majority, a citizen of the United States of America, has a domicile in Orange County, Florida, and has a residence in Washtenaw County, Michigan.

3.      Defendant AMAZON.COM, INC. is a corporation organized and existing under the laws of the State of Delaware, with a principal office address at 410 Terry Avenue North, Seattle, Washington 98109-5210 and does business under the fictitious business name AMAZON BUSINESS.

4.      Defendant AMAZON WEB SERVICES, INC. is a corporation organized and existing under the laws of the State of Delaware, with a principal office address at 410 Terry Avenue North, Seattle, Washington 98109-5210.

Jurisdiction

5.      This Court has jurisdiction over this action under MCL 600.601, MCL 445.111c(3), and 47 USC 227(b)(3) as the amount in controversy exceeds $25,000 and Plaintiff seeks relief authorized by, inter alia, the MHSSA, including damages, attorney fees, and equitable relief.

6.      Plaintiff also seeks injunctive relief, which is within the original jurisdiction of this court.

7.      This Court has limited personal jurisdiction over Defendant Amazon, pursuant to MCL 600.715, as a result of the defendant: transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

Venue

8.      Venue is proper in this Court, pursuant to MCL 600.1629(a)(1)(b)(i), as the tortious or illegal conduct complained of occurred in this judicial district, to wit, the illegal telemarketing

2

calls were directed to a telephone number with a Michigan telephone area code; and the illegal telephone calls were received by Plaintiff in this judicial district, to wit: at Plaintiff's residence in Lima Township, Washtenaw County, Michigan.

Preliminary Statement

9.      As the Supreme Court recently explained, "Americans passionately disagree about many things.  But they are largely united in their disdain for robocalls." *Barr v. American Association of Political Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

10.      The Federal Government receives a staggering number of complaints about robocalls with about 3.7 million complaints in 2019 alone. Id.

11.      In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent persons, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

12.      According to the Federal Communications Commission ("FCC"), "unwanted calls and texts are the number one complaint to the FCC."

13.      In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the TCPA, explained, "computerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall . . . these computerized telephone calls threaten our personal safety . . . These machines are out of control, and their use is growing by 30 percent every year.  It is telephone terrorism, and it has got to stop...."  *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 17 FCC Rcd. 17459, 17474, fn. 90, 2002 WL 31083949 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

14.     Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

15.     As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike qui tam statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

Telephone Consumer Protection Act

16.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.   Congress found that these calls were not only a nuisance and invasion of privacy to consumers specifically, but were also a threat to interstate commerce generally.   See S. Rep. No. 102-178, at 2-3, 1991 U.S.C.C.A.N. 1968, 1969-71, 1991 WL 211220 (1991).

17.     The TCPA imposes restrictions on the use of automated telephone equipment.   47 USC 227(b)(1).

18.     Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 USC 227(b)(2), the FCC has adopted regulations to implement the aforesaid restrictions on use of automated telephone equipment. The TCPA implementing regulations are promulgated at 47 CFR 64.1200(a), et seq.

19.     As part of the restrictions on use of automated telephone equipment, Congress created a private right of action for aggrieved persons to receive $500.00 in damages for each violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 USC 227(b)(3).

4

20.     Additionally, the Congress also sought to protect subscriber privacy rights, and directed the FCC to initiate a rulemaking proceeding to compare and evaluate alternative methods and procedures, and to develop proposed regulations to implement the methods and procedures that the FCC determines are most efficient to accomplish the need to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.   47 CFR 227(c)(1). The FCC conducted such a rulemaking and implemented regulations to protect telephone subscribers' privacy rights. See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144, 2003 WL 21713245 (2003).

21.     As part of the protection of subscriber privacy rights, Congress created a private right of action for aggrieved persons to receive $500.00 in damages for each violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 USC 227(c)(5).

<u>Michigan Home Solicitation Sales Act</u>

22.     The Michigan Legislature has also enacted statutes governing and restricting telephone solicitors from making or causing to be made a telephone solicitation to a residential telephone subscriber.   The restrictions include, inter alia, a prohibition on telephone solicitations to a residential telephone subscriber whose name and residential telephone number appears on the national do-not-call list. MCL 445.111a(5).

23.     The MHSSA provides that a person who suffers a loss as a result of violation of the MHSSA may bring an action to recover actual damages or $250.00, together with reasonable attorney fees.   MCL   445.111c(3).

General Allegations

24.     Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God.   Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, some claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

25.     Plaintiff's telephone number is 734-***-*300.

26.     Plaintiff uses his telephone number 734-***-*300 primarily for personal, family, and household communications, and not for business purposes.

27.     Plaintiff's telephone number 734-***-300 is a telephone number which Plaintiff is charged on a per call and per minute basis.

28.     Plaintiff's telephone number 734-***-*300 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 CFR Part 310 and has been so listed continuously since at least June 1, 2004, and at all times subsequent thereto and relevant hereto.

29.     By listing his telephone number on the National Do Not Call Registry, Plaintiff has given constructive notice to the World, including the Defendant, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential telephone number.

30.     Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations. *FCC v. WNCN Listeners Guild*, 450 U.S. 582, 598, 101 S.Ct. 1266, 1276, 67 L.Ed.2d 521 (1981) citing *Red Lion Broadcasting Co. v. FCC*, 395 U. S. 367, 395

U. S. 381 (1969) ("the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . .").

31.     The FCC deems any telephone number "assigned to ... any service for which the called party is charged for the call" to be a "wireless number." *In the Matter of Rules and Regulations Implementing the TCPA*, 35 FCC Rcd. 15188, 15188, 2020 WL 7873750, *1, ¶ 3, n. 5 (2020).

32.     The FCC has declared that wireless subscribers who ask to be put on the national do-not-call list are presumed to be "residential subscribers." *In the Matter of Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14013, 14039, 2003 WL 21517853, *14, ¶ 36 (2003).

33.     The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8000-8001, 2015 WL 4387780, *26, ¶ 73 (2015).

34.     Plaintiff is the customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same.   Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's provisions.   See, e.g. *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316 (3rd Cir., 2015).

35.     At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant.

36.     At no time has Plaintiff provided permission to the Defendant to engage in

telephone solicitation with the Plaintiff via telephone.

37.     At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) for any of the Defendant or anyone acting on behalf of the Defendant to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's cellular telephone number.

38.     At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with the Defendant.

39.     The FCC has declared that a necessary element for a person to provide "consent" is that the person must knowingly and voluntarily provide the telephone number at which they are authorizing telemarketing calls to be received at.  For example, capturing a caller's telephone number by a Caller ID or ANI device cannot be considered consent to receive telemarketing calls. *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928, *11, ¶ 31 (1992).

40.     The FCC has further declared that persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, if the caller is making calls within the scope of the consent given, and absent instructions to the contrary.  *In the Matter of Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8028, 2015 WL 4387780, *47, ¶ 141 (2015).

41.     At no time has Plaintiff released his phone number to the Defendant in order to have given invitation or permission to be called at that number for any telephone call that includes or introduces an advertisement or constitutes telemarketing.

42.     Similarly, for purposes of an "established business relationship," the FCC has

8

declared that a consumer inquiry cannot be considered to create a business relationship where the consumer's number has been captured absent that consumer's express invitation or permission to be contacted at the captured number. *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8771, 1992 WL 690928, *13, n. 67 (1992).

43. Consent cannot be "presumed." The TCPA and the Commission's rules plainly require express consent, not implied or "presumed" consent. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7991, 2015 WL 4387780, *20, ¶ 52 (2015).

44. The FCC places the burden on the caller to prove that they have the necessary consent that satisfies federal laws and regulations. They may not, for example, rely on comparison websites or other types of lead generators to retain proof of consent for calls the seller makes. In all cases, the consent must be from the consumer. "Fake leads" that fabricate consumer consent do not satisfy the TCPA or the TCPA implementing regulations. A consumer's consent is not transferable or subject to sale to another caller because it must be given by the consumer to the seller. *In the Matter of Rules and Regulations Implementing the TCPA*, 38 FCC Rcd. 12247, 12267, 2023 WL 8826682, *13, ¶ 49 (2023).

45. The TCPA places no affirmative obligation on a called party to opt out of calls to which he or she never consented; the TCPA places responsibility on the caller alone to ensure that he or she has valid consent for each call made. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8004, 2015 WL 4387780, at *29, ¶ 81 (2015).

46. The FCC has declared that "[p]urporting to obtain consent during the call... does not constitute the *prior* consent necessary to deliver the message in the first place as the request... is part of the telemarketing." *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, *49, ¶ 142 (2003) [Emphasis as in original].

9

47. The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 20 FCC Rcd. 13664, 13667, 2005 WL 1981564, *3, ¶ 7 (2005).

48. A seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification. *In re Dish Network*, 28 FCC Rcd. 6574, 6584, 2013 WL 1934349, *9, ¶ 28 (2013).

49. Pursuant to 47 USC 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by a common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

50. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. See, e.g., *Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340, *4 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

51. It is well settled under Michigan law that corporate employees and officials are

10

personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

52. Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words or may be implied and understood to exist from the conduct itself. Whenever two or more persons commit tortious acts in concert, each become subject to liability for the acts of the others, as well as for his own acts. In either case, the defendant's embrace of the actor's purpose or design—whether by agreement or by action—renders the defendant liable for the underlying tort.

53. The liability of coconspirators to civil damages is joint and several. All those who, in pursuance of a common plan to commit a tortious act actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him.

54. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

55. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

56. For each and every call alleged herein initiated to Plaintiff's telephone line,

11

Defendant caused an injury in the form of a nuisance and annoyance to the Plaintiff.  For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them.  Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls.  This also impaired the usefulness of these features on Plaintiff's  telephone, which features are designed to inform the user of important missed communications.

57.     Each and every call placed without consent by Defendant alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

58.     For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective  of any intent to violate the law.   A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

<u>About Amazon</u>

59.     Amazon is the world's largest online retailer and one of the largest providers of cloud services. As of 2025, it is considered a giant in both e-commerce and cloud computing.

60.     The platform operates in more than 20 countries worldwide. These active Amazon marketplaces serve hundreds of millions of customers annually, offering a monumental product range and inventory.

61.     Amazon utilizes telemarketing as a cost effective means of reaching out to consumers across the United States to pitch subscribing to Amazon's services.

62.     As part of its telemarketing practices, Amazon utilizes automated telephone dialing systems to contact consumers *en masse* by dialing consumers' telephone numbers and determining whether a consumer is qualified for and interested in subscribing to Amazon's services.

12

63.     The automated telephone dialing systems utilized by Amazon dials telephone numbers generated by a sequential or random number generator, and where a dialed number does not answer, stores that number and uses the random number generator to retrieve stored numbers to be called later.

64.     The automatic telephone dialing systems used to place the calls to Plaintiff are capable of, and in fact do, use a random or sequential number generator to store and to produce the telephone numbers actually dialed, including Plaintiff's number, and to dial those numbers without human intervention. These systems do not merely select numbers from a fixed list, but instead rely on a random or sequential number generator as part of the process of storing and producing the numbers to be called.

65.     Plaintiff's allegations regarding the use of such automatic telephone dialing systems are based on but not limited to the characteristic "click" and multi-second pause he consistently heard after answering each call, the repeated hang-ups, the high-volume campaign of calls, and the telemarketer's description during Call 9 that he "has a computerized dialer system" and that Plaintiff's number is in the list and "the dialer just dials the numbers and connects the calls to him."

66.     A common characteristic of the use of an automatic telephone dialing system is a "click" or "boink" sound heard immediately after answering, followed by a delay, before a live telemarketer comes onto the line.   The automated telephone dialing system will only connect a telemarketer after a consumer has answered, thereby reducing the number of live telemarketers that must be employed.

67.     Unfortunately, Amazon does not scrub its outbound telephone lists against the National Do Not Call Registry, and thus will indiscriminately call persons whose telephone

13

numbers are listed on the National Do Not Call Registry, with Plaintiff's telephone number being one such indiscriminately called number.

68. In each of Calls 1 through 9, the telemarketer expressly represented that he or she was "an account manager with Amazon Business," "with Amazon Web Services," or "calling on behalf of Amazon Web Services," and promoted Amazon-branded products and services, including a "free Amazon Business account" and related Amazon subscription services.

69. The callbacks that Plaintiff placed to the caller ID numbers, and the follow-up emails Plaintiff received from "Amazon Business" and "Amazon Business" representatives, likewise confirmed that the calls were made to advertise and sell Defendants' Amazon Business and Amazon Web Services offerings.

70. Accordingly, each of the telemarketing calls alleged herein was made to induce the purchase or use of "seller" Defendants' goods or services within the meaning of the TCPA and its implementing regulations, and each caller was acting as Defendants' agent and/or with Defendants' apparent authority.

71. Following certain calls, Defendants caused or allowed follow-up emails to be sent from "Amazon Business" email accounts confirming the subject of the calls and inviting Plaintiff to enroll in Amazon services, thereby accepting the benefits of the telemarketing and ratifying the acts of the callers.

72. By directing, authorizing, and benefitting from this Amazon-branded telemarketing, and by failing to repudiate or terminate such conduct after Plaintiff's do-not-call demands, Defendants are liable for the calls under traditional agency principles, including actual authority, apparent authority, and ratification.

14

<u>Call 1</u>

73.     On January 23, 2024, at 11:09 A.M., Amazon or Amazon's agent initiated a call to Plaintiff's telephone number 734-***-*300.

74.     The caller identification number displayed was 206-875-3627, with no caller identification name information.

75.     Upon answering the incoming call by saying "hello", Plaintiff heard a click sound, followed by approximately 4 seconds of silence, followed by a live male telemarketer identifying himself as "Zeyad, an account manager with Amazon Business."

76.     Zeyad informed Plaintiff that Plaintiff was qualified for a "free Amazon Business account" and wanted to send Plaintiff an email with information so that Plaintiff may sign up.

77.     Plaintiff provided Zeyad with a controlled email address, and informed Zeyad not to call Plaintiff and if Plaintiff had any interest, Plaintiff would call Zeyad back.

78.     At no time during this telephone call did Plaintiff provide his telephone number.

79.     On January 23, 2024, at 11:14 A.M., Plaintiff received an email at his controlled email address from Zeyad Essam on behalf of Amazon Business.

80.     Immediately after the termination of the call, Plaintiff dialed the caller identification number display (206-875-3627) to make a do-not-call demand and the call merely rang and went unanswered.

<u>Call 2</u>

81.     On February 14, 2024, at 4:37 P.M., Amazon or Amazon's agent initiated a  call to Plaintiff's telephone number 734-***-*300.

82.     The caller identification number displayed was 206-875-3627, with no caller identification name information.

83.     Upon Plaintiff answering the incoming call by saying "hello," Plaintiff heard a click sound, approximately 3 seconds of silence, and then the call immediately terminated.

<u>Call 3</u>

84.     Within seconds after Call 2, supra, terminated, on February 14, 2024, at 4:38 P.M., Amazon or Amazon's agent initiated a  call to Plaintiff's telephone number 734-***-*300.

85.     The caller identification number displayed was 206-875-3627, with no caller identification name information.

86.     Upon Plaintiff answering the incoming call by saying "hello," Plaintiff heard a click sound, approximately 3 seconds of silence, and then the call immediately terminated.

87.     Immediately after the termination of the call, Plaintiff dialed the caller identification number display (206-875-3627) to make a do-not-call demand; the call merely rang and went unanswered.

<u>Call 4</u>

88.     On February 28, 2024, at 3:37 P.M., Amazon or Amazon's agent initiated a  call to Plaintiff's telephone number 734-***-*300.

89.     The caller identification number displayed was 206-875-3627, with no caller identification name information.

90.     Upon Plaintiff answering the incoming call by saying "hello," Plaintiff heard a click sound, approximately 3 seconds of silence, and then the call immediately terminated.

<u>Call 5</u>

91.     Within seconds after Call 4, supra, terminated, on February 28, 2024, at 3:38 P.M., Amazon or Amazon's agent initiated a call to Plaintiff's telephone number 734-***-*300.

92.     The caller identification number displayed was 206-875-3627, with no caller

16

identification name information.

93.     Upon Plaintiff answering the incoming call by saying "hello," Plaintiff heard a click

sound, approximately 3 seconds of silence, and then the call immediately terminated.

94.     Immediately after the termination of the call, Plaintiff dialed the caller

identification number display (206-875-3627) to make a do-not-call demand; the call merely rang

and went unanswered.

<u>Call 6</u>

95.     On October 10, 2024, at 10:11 A.M., Amazon or Amazon's agent initiated a  call

to Plaintiff's telephone number 734-***-*300.

96.     The caller identification number displayed was 415-813-5040, with no caller

identification name information.

97.     Upon Plaintiff answering the incoming call by saying "hello," Plaintiff heard a click

sound, approximately 3 seconds of silence, and then a female telemarketer, speaking in an accent,

identified herself as "Maria with Amazon Web Services."

98.     Plaintiff made demand to Maria for a copy of their written do-not-call policy.

Maria responded with "what be that?".

99.     Plaintiff told Maria to place his telephone number on their do-not-call list.   Maria

suddenly terminated the call.

100.    Immediately after the termination of the call, Plaintiff dialed the caller

identification number displayed (415-813-5040) in order to make a do-not-call demand.   The line

rang 3 times and then went to a busy signal.

<u>Call 7</u>

101.    On October 31, 2024, at 11:34 A.M., Amazon or Amazon's agent initiated a  call

to Plaintiff's telephone number 734-***-*300.

102.    The caller identification number displayed was 678-897-2475, with no caller identification name information.

103.    Upon Plaintiff answering the incoming call by saying "hello," Plaintiff heard a click sound, approximately 3 seconds of silence, and then a female telemarketer, speaking in an accent, identified herself as "Tina calling on behalf of Amazon Web Services."

104.    Plaintiff requested Tina's call back telephone number.   Tina responded that she could not provide a number because she uses an "Internet VoIP line."

105.    Plaintiff made demand to Tina for a copy of their written do-not-call policy.   Tina expressed uncertainty as to what Plaintiff was requesting.

106.    Plaintiff asked for Tina's company address.   Tina abruptly terminated the call.

107.    Immediately after the termination of the call, Plaintiff dialed the caller identification number displayed (678-897-2475) in order to make a do-not-call demand.   The line rang once and then went to silence and then disconnected after 15 seconds.

<u>Call 8</u>

108.    On December 23, 2024, at 10:29 A.M., Amazon or Amazon's agent initiated a   call to Plaintiff's telephone number 734-***-*300.

109.    The caller identification number displayed was 213-737-8771, with no caller identification name information.

110.    Upon Plaintiff answering the incoming call by saying "hello," Plaintiff heard a click sound, approximately 3 seconds of silence, and then a female telemarketer, speaking in an accent, identified herself as "Jem, an account manager with Amazon Business."

111.    Plaintiff made demand to Jem for a copy of their written do-not-call policy.   Jem

18

stated that "we can just remove your number." Plaintiff reiterated that he was requesting a copy of Amazon's written do-not-call policy. Jem stated that she would have to check. Plaintiff provided Jem with an email address to which to send the written do-not-call policy.

112.    Plaintiff reiterated a demand to be placed upon Amazon's do-not-call list; Jem terminated the call.

113.    Immediately after the termination of the call, Plaintiff dialed the caller identification number displayed (213-737-8771) in order to make a do-not-call demand. The line rang once and was answered by a recorded message that stated: "Thank you for calling Amazon Business. We cannot take your call at the moment, but we can call you back in the next two business days. From all of us at Amazon Business, thank you and have a nice day."

114.    On December 23, 2024, at 10:40 A.M., Plaintiff received an email from Jen Tolentino of Amazon Business stating: "Good morning! As discussed, we will remove you from our calling list."

<u>Call 9</u>

115.    On June 12, 2025, at 11:58 A.M., Amazon or Amazon's agent initiated a  call to Plaintiff's telephone number 734-***-*300.

116.    The caller identification number displayed was 417-733-8295, with no caller identification name information.

117.    Upon Plaintiff answering the incoming call by saying "hello," Plaintiff heard a click sound, approximately 3 seconds of silence, and then a male telemarketer, speaking in an accent, identified herself as "Yousef, an account manager with Amazon Business."

118.    Plaintiff inquired of Yousef as to how he had acquired Plaintiff's telephone number. Yousef responded that he has a computerized dialer system and that Plaintiff's telephone number

is in the list and that the dialer just dials the numbers and connects the calls to him.

119. Plaintiff asked Yousef for an address to which Plaintiff can send a cease and desist demand. Yousef responded that he was in Egypt and would not provide any address.

120. Plaintiff made demand to Yousef for a copy of Amazon's written do-not-call policy. Yousef was uncertain as to what Plaintiff was requesting.

121. Plaintiff made demand to be placed upon Amazon's do-not-call list. Yousef abruptly terminated the call.

## COUNT I
## TCPA VIOLATION - 47 CFR 64.1200(a)(1)(iii)

122. Plaintiff realleges and incorporates all prior allegations as though fully set forth herein.

123. Each of Calls 1 through 9, supra, were in violation of the TCPA, and specifically 47 CFR 64.1200(a)(1)(iii), as Amazon or Amazon's agent initiated a telephone call, other than for emergency purposes and without the prior express consent of the called party, using an automatic telephone dialing system, to a telephone number assigned to a service for which the called party is charged for the call.

124. As alleged above, Defendants and/or their agents used automatic telephone dialing systems that relied on a random or sequential number generator to store and produce the telephone numbers actually dialed, including Plaintiff's number.

125. As alleged above, each of Calls 1 through 9 was placed for the purpose of advertising and promoting Amazon Business and/or Amazon Web Services, and was made by Defendants or by third-party telemarketers acting on behalf of Defendants as "sellers" under the TCPA.

126. The aforesaid violations of the TCPA were willful and/or knowing as is evidenced

20

by the repetitive number of calls and violations.

**COUNT II**
**TCPA VIOLATION - 47 CFR 64.1200(a)(2)**

127.   Plaintiff realleges and incorporates all prior allegations as though fully set forth herein.

128.   Each of Calls 1 through 9, supra, were in violation of the TCPA, and specifically 47 CFR 64.1200(a)(2), as Amazon or Amazon's agent initiated, or caused to be initiated, a telephone call that constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to a telephone number assigned to a service for which the called party is charged for the call, and without the prior express written consent of the called party.

129.   As alleged above, each of Calls 1 through 9 was placed for the purpose of advertising and promoting Amazon Business and/or Amazon Web Services, and was made by Defendants or by third-party telemarketers acting on behalf of Defendants as "sellers" under the TCPA.

130.   The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

**COUNT III**
**TCPA VIOLATION - 47 CFR 64.1200(a)(7)**

131.   Plaintiff realleges and incorporates all prior allegations as though fully set forth herein.

132.   A call is "abandoned" if it is not connected to a live sales representative within two (2) seconds of the called person's completed greeting.   47 CFR 64.1200(a)(7).

133.   Each of Calls 1 through 9, supra, were abandoned as each call was not connected to a live sales representative within two (2) seconds of the called person's completed greeting.

21

134.    The fact that 9 of the 9 calls received by Plaintiff from Amazon were abandoned supports a reasonable inference that Amazon abandons more than three percent of all telemarketing calls that are answered live by a person, as measured over a 30–day period for a single calling campaign which Plaintiff believes will be confirmed in discovery.

135.    Each of Calls 1 through 9, supra, were in violation of the TCPA, and specifically 47 CFR 64.1200(a)(7), as Amazon or Amazon's agent abandoned more than three percent of all telemarketing calls that are answered live by a person, as measured over a 30–day period for a single calling campaign.

136.    As alleged above, each of Calls 1 through 9 was placed for the purpose of advertising and promoting Amazon Business and/or Amazon Web Services, and was made by Defendants or by third-party telemarketers acting on behalf of Defendants as "sellers" under the TCPA.

137.    The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

## COUNT IV
## TCPA VIOLATION - 47 CFR 64.1200(a)(7)(i)(A)

138.    Plaintiff realleges and incorporates all prior allegations as though fully set forth herein.

139.    Each of Calls 1 through 9, supra, were in violation of the TCPA, and specifically 47 CFR 64.1200(a)(7)(i)(A), as Amazon or Amazon's agent initiated a call where a live sales representative was not available to speak with the person answering the call, within two (2) seconds after the called person's completed greeting, and the telemarketer or the seller did not provide a prerecorded identification and opt-out message that is limited to disclosing that the call was for "telemarketing purposes" and stating a telephone number for such business, entity, or individual

22

that permits the called person to make a do-not-call request.

140.   As alleged above, each of Calls 1 through 9 was placed for the purpose of advertising and promoting Amazon Business and/or Amazon Web Services, and was made by Defendants or by third-party telemarketers acting on behalf of Defendants as "sellers" under the TCPA.

141.   The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

### COUNT V
### TCPA VIOLATION - 47 CFR 64.1200(a)(7)(i)(B)

142.   Plaintiff realleges and incorporates all prior allegations as though fully set forth herein.

143.   Each of Calls 1 through 9, supra, were in violation of the TCPA, and specifically 47 CFR 64.1200(a)(7)(i)(B), as Amazon or Amazon's agent initiated a call where a live sales representative was not available to speak with the person answering the call, within two (2) seconds after the called person's completed greeting, and the telemarketer or the seller did not provide an automated, interactive voice- and/or key press-activated opt-out mechanism that enables the called person to make a do-not-call request prior to terminating the call, including brief explanatory instructions on how to use such mechanism.

144.   As alleged above, each of Calls 1 through 9 was placed for the purpose of advertising and promoting Amazon Business and/or Amazon Web Services, and was made by Defendants or by third-party telemarketers acting on behalf of Defendants as "sellers" under the TCPA.

145.   The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by the repetitive number of calls and violations.

## COUNT VI
### TCPA VIOLATION - 47 CFR 64.1200(c)(2)

146.     Plaintiff realleges and incorporates all prior allegations as though fully set forth herein.

147.     Each of Calls 1 through 9, supra, were in violation of the TCPA, and specifically 47 CFR 64.1200(c)(2), as Amazon or Amazon's agent initiated a telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government and having not obtained the subscriber's prior express invitation or permission and not having a personal relationship with the recipient of the call.

148.     As alleged above, each of Calls 1 through 9 was placed for the purpose of advertising and promoting Amazon Business and/or Amazon Web Services, and was made by Defendants or by third-party telemarketers acting on behalf of Defendants as "sellers" under the TCPA.

149.     The aforesaid violations of the TCPA were willful and/or knowing.

## COUNT VII
### TCPA VIOLATION - 47 CFR 64.1601(e)

150.     Plaintiff realleges and incorporates all prior allegations as though fully set forth herein.

151.     Each of Calls 1 through 9, supra, were in violation of the TCPA, and specifically 47 CFR 64.1601(e), as Amazon or Amazon's agent initiated a telemarketing call but did not transmit caller identification information which included the name of the telemarketer or seller on behalf of which the telemarketing call is placed, and the telephone number so provided would not permit any individual to make a do-not-call request during regular business hours.

152.     As alleged above, each of Calls 1 through 9 was placed for the purpose of advertising and promoting Amazon Business and/or Amazon Web Services, and was made by Defendants or by third-party telemarketers acting on behalf of Defendants as "sellers" under the TCPA.

153.     The aforesaid violations of the TCPA was willful and/or knowing as Defendant had to take deliberate overt action to manipulate the caller identification information.

## COUNT VIII
## MHSSA VIOLATIONS

154.     Plaintiff realleges and incorporates all prior allegations as though fully set forth herein.

155.     Each of Calls 1 through 9, supra, were in violation of the MHSSA, and specifically MCL 445.111a(5), as Amazon or Amazon's agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then current version of the federal do-not-call list.

156.     As alleged above, each of Calls 1 through 9 was placed for the purpose of advertising and promoting Amazon Business and/or Amazon Web Services, and was made by Defendants or by third-party telemarketers acting on behalf of Defendants.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendant, as follows:

25

A.  Damages:

    i.  Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| I | 9 |
| II | 9 |
| III | 9 |
| IV | 9 |
| V | 9 |
| VI | 9 |
| VII | 9 |

    ii. A total of 63 violations at $500.00 per violation, for damages of $31,500.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $94,500.00;

    iii.  Damages for violations of the MHSSA alleged at Count VIII: 9 violations at $250.00 per violation, for damages of $2,250.00; and

    iv.  The cumulative total amount of damages claimed in this action is $96,750.00, and in the event of default judgment is the sum certain damages amount that will be sought. This amount establishes original jurisdiction in the Circuit Count under applicable Michigan law.

B.  An award of Plaintiff's reasonable attorney fees as provided by MCL 445.111c(4), and any other applicable law;

C.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

D.  Plaintiff requests that this court issue a permanent injunction, following hearing or at trial, enjoining Defendant Amazon and its agents or

26

representatives from initiating further telephone solicitations or telemarketing calls to Plaintiff in violation of applicable law;

       E.     An award of statutory interest on any money judgment as provided by MCL 600.6013, calculated from the date of filing of the complaint until the judgment is satisfied; and,

       F.     Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: February 10, 2026

*/s/ C. Robert Dobronski III*
C. Robert Dobronski III (P72684)
Oxbridge Legal Services, PLLC
Attorney for Plaintiff
340 North Main Street, Suite 324
Plymouth, Michigan   48170-1250
(734) 892-2069
Robert@Oxbridge.Law

27